IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EUGENIO LOPEZ RODRIGUEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:17-CV-236-Z-BR |
| | § | |
| DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Eugenio Lopez Rodriguez ("Petitioner") filed a Petition for a Writ of Habeas Corpus challenging the constitutionality and legality of the manner in which the life sentence assessed for his 1983 Texas state court conviction out of Andrews County is being calculated. For the reasons set forth below, the undersigned United States Magistrate Judge is of the opinion that Petitioner's application for federal habeas corpus relief under Section 2241 of Title 28 of the United States Code should be DENIED.

**I.      PROCEDURAL HISTORY**

On July 22, 1982, Petitioner was convicted of the offense of armed robbery and assessed a five-year sentence in Texas. (ECF 21-10 at 22–24). On April 20, 1982, while incarcerated, Petitioner committed the offense of capital murder. (ECF 21-21 at 20). Also, while serving his five-year sentence, Petitioner was transported to the State of New Mexico, by writ, to answer a charge of armed robbery that occurred in that state. (ECF 1 at 5; ECF 21-10 at 13).

On February 9, 1983, Petitioner was convicted of the New Mexico armed robbery offense and assessed a nine-year sentence, said sentence to run consecutive to the five-year Texas sentence

he was then serving. (ECF 21-10 at 13–15). Petitioner was then transferred back to Texas to answer to new charges. Petitioner "discharged" his five-year Texas sentence in 1987, but has remained in Texas since that time, serving subsequent Texas sentences. (ECF 1 at 5).

On November 28, 1983, Petitioner was convicted in Ector County, Texas, pursuant to a guilty plea, of the offense of murder (committed May 2, 1982) and assessed a life sentence, said sentence to run consecutive to the nine-year New Mexico sentence for armed robbery. (ECF 21-11 at 4–6); *State v. Rodriguez*, No. B15,187.

On December 7, 1983, Petitioner was convicted, pursuant to a guilty plea, of the April 20, 1982 capital murder offense, out of Andrews County, Texas, and assessed a life sentence of imprisonment, said sentence to run consecutive to the 9-year New Mexico sentence and the previously imposed Texas life sentence. (ECF 21-10 at 25); *State v. Rodriguez*, No. 1532.

On August 25, 1984, Petitioner was convicted in New Mexico, pursuant to a guilty plea, of two (2) counts of murder, one count of armed robbery, and one count of escape. *State of New Mexico v. Eugenio Lopez Rodriguez*, No. D-1010-CR-198400046. Petitioner was assessed a life sentence as a result of these convictions. *Id.* The State of New Mexico purportedly lodged four detainers against Petitioner requesting the Texas Department of Criminal Justice, Correctional Institutions Division, notify that state when Petitioner's release is imminent in order for that state to take Petitioner into New Mexico custody to begin serving his New Mexico life sentence, and the nine-year sentence for his previous New Mexico convictions of aggravated robbery and conspiracy. (ECF 1 at 5–6).

In 1986, then counsel for Petitioner filed a motion in district court concerning the execution of Petitioner's New Mexico and Texas state sentences. (ECF 1 at 21–22). Counsel argued that only the Travis County, Texas five-year sentence was imposed *before* Petitioner's first New Mexico

nine-year sentence was imposed. *Id*. Petitioner's two life-sentence Texas convictions (Ector County and Andrews County) were imposed subsequent to this New Mexico nine-year sentence. *Id.* at 22. Counsel argued that Petitioner should have discharged that nine-year sentence before being transferred back to Texas. *Id*.

On October 16, 1989, Petitioner was granted federal habeas corpus relief with regard to his November 28, 1983 Ector County, Texas, murder conviction and life sentence, and the State subsequently moved to dismiss the murder charge, as follows:

> On October 16, 1989, the district court … concluded that reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that a new trial was necessary in the interests of justice. The district court remanded the case to the convicting court for retrial of Rodriguez' Ector County murder conviction or dismissal of the indictment.
>
> The state trial court dismissed the prosecution on November 30, 1989. The state averred that it "no longer wishe[d] to prosecute [Rodriguez], as another defendant has plead guilty to the murder of Ocie Smith Speed."

*Rodriguez v. Holmes*, 963 F.2d 799, 802 (5th Cir. 1992).

On March 30, 1995, Petitioner was convicted in Texas federal court of two counts of the offense of mailing threatening communications to federal judges and received a 60-month sentence to run consecutive to his 1983 Andrews County, Texas life sentence. *See United States v. Rodriguez*, Crim. No. H-95-CR-0062 (S.D. Tex.).

On December 7, 2003, Petitioner became eligible for release to parole on his Texas life sentence.[1] Petitioner has presumably been considered for parole at various intervals since that time. On September 12, 2017, Petitioner was denied early release from confinement to parole on his life sentence and given a 3-year set-off. (ECF 1 at 5). Petitioner claims that the four New Mexico detainers are affecting his release to parole in Texas. *Id*.

---

[1] Texas Department of Criminal Justice Online Offender Search
https://offender.tdcj.texas.gov/OffenderSearch/start.action (last accessed December 7, 2020).

Petitioner placed his federal habeas petition in the prison mailing system on November 11, 2017. (ECF 1 at 15). Respondent filed an answer on May 16, 2018, arguing that Petitioner's claims are unexhausted and non-cognizable and should be dismissed. (ECF 20 at 1–9). Interestingly, Respondent classifies the petition as a 28 U.S.C. § 2254 attack on Petitioner's judgment of conviction, and not a § 2241 petition, but acknowledges that Petitioner is challenging parole issues. *See id.* Petitioner did not file a reply, but rather filed a motion requesting a hearing to allow Petitioner to "plea the jurisdictional issues" in his case. (ECF 22 at 3). By this motion, Petitioner alleges that the Respondent failed to provide the Court with his New Mexico convictions; however, these documents are in the record before the Court. *See id.*; *see also* ECF 21-10 at 13–14 (Eddy County, New Mexico February 9, 1983 convictions).

## II.     PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Due process violation – Petitioner's New Mexico sentences should have begun after his Travis County sentence for aggravated robbery was completed in 1987; instead, Petitioner was kept in Texas to serve a *subsequent* Texas sentence, in violation of his New Mexico plea agreements and the trial court's order. This resulted in New Mexico lodging multiple detainers in Texas. Petitioner alleges that these detainers prevented Petitioner's release to parole on his Texas 1983 murder conviction and life sentence. Further, Petitioner alleges he was denied parole multiple times since 2003 (most recently in 2017), as a result of these New Mexico detainers; and

2. Because the New Mexico detainers resulted in Petitioner's Texas parole denial, Petitioner's sentence effectively amounts to life without parole, in violation of his plea agreements.

(ECF 1 at 5–6).

## III.     JURISDICTION UNDER 28 U.S.C. § 2241

A petition for writ of habeas corpus that "attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration," *including parole issues*, is properly

considered under the general habeas authority of 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (emphasis added). Under 28 U.S.C. § 2241(d), state convicts may file federal habeas corpus petitions in the district where they are confined or where they were convicted. Section 2241(d) leans in favor of filing the petition in the division where the witnesses are located, rather than in the division in which the applicant is confined. Petitioner is challenging a parole denial from this Court's venue and jurisdiction; thus, venue lies here.

The one-year statute of limitations period has not been extended to Section 2241 petitions. *United States v. Pipkins*, No. 07CR0163, 2012 WL 1019118, at * 1 (E.D. La. Mar. 26, 2012) (Duval, J.) ("However, unlike § 2554 habeas petitions, which are governed by the [AEDPA], § 2241 petitions have no statute of limitations."); *Hartfield v. Quarterman*, 603 F.Supp.2d 943, 948 (S.D. Tex. 2009); *Williams v. Louisiana's A.G.'s Office*, No. 07–603, 2007 WL 2915078, at *3 (E.D. La. Oct. 4, 2007) (Order adopting report and recommendation). Section 2241 has not been amended to include a limitations period for filing a petition under that section. *Homayun v. Cravener*, 39 F.Supp.2d 837 (S.D. Tex. 1999) (citing *Sandoval v. Reno*, 166 F.3d 225, 234 (3d Cir. 1999) and *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir. 1998), *cert. denied*, 526 U.S. 1004 (1999)). Thus, a petitioner relying on Section 2241 is not subject to the one-year limitations period set forth in other provisions of the AEDPA. *Homayun*, 39 F.Supp.2d at 841.

### IV.   MERITS

Essentially, Petitioner is challenging the denial of his parole in Texas on the basis of the New Mexico "detainers," and one detainer is for a nine-year sentence imposed *prior to* the current Andrews County life sentence from which Petitioner is seeking parole. As such, Petitioner is challenging the execution of his sentence and, as the New Mexico court determined (*See* ECF 3 at 1), the Court will consider Petitioner's application pursuant to 28 U.S.C. § 2241.

### A. Exhaustion of Remedies

Although there is no reference to an exhaustion requirement in the statutory language of 28 U.S.C. § 2241, a federal court should abstain from the exercise of its habeas jurisdiction if the claims asserted in a petition may be resolved on the merits in the state courts or by some other state procedure available to the petitioner. *See Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir. 1987); *see also Edge v. Stalder*, 83 Fed. Appx. 648, 2003 WL 22976091, at *1 (5th Cir. 2003); *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 489–92 (1973). Applying the exhaustion doctrine to Section 2241 as a matter of comity is based on federalism grounds to protect the state courts' important independent jurisdictional opportunity to address and initially resolve any constitutional issues arising within their jurisdiction and to limit federal interference in the state adjudicatory process. *Dickerson*, 816 F.2d at 225.

Generally, the exhaustion requirement is satisfied only when all grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner. *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). In Section 2241 cases, this exhaustion requirement is obviated only if "special circumstances" exist. *Dickerson*, 816 F.2d at 225 (citing *Braden*, 410 U.S. at 489); *Tooten v. Shevin*, 493 F.2d 173, 177 (5th Cir. 1975).

In Texas, prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal Appeals, TEX. CODE CRIM. PROC. art. 44.45, through a petition for discretionary review and/or a state application for writ of habeas corpus. TEX. R. APP. P. 68; TEX. CODE CRIM. PROC. art. 11.07, et seq. In addition, the claims must be presented in a "procedurally correct manner." *Deters v. Collins*, 985 F.2d 789, 794 (5th Cir. 1993). Due to the absence of a one-year limitations in Section 2241 cases, a petitioner challenging the prison authorities' determination of

his sentence duration maintains the opportunity to bring such a challenge to the state's highest court as long as the conditions challenged (the allegedly unfair execution of his sentence) persist; thus, nothing prevented Petitioner from filing these claims in state court.

Petitioner argues that prior counsel filed these claims in *New Mexico* state *district* court back in 1984. (ECF 1 at 12). However, Petitioner acknowledges that no claim for parole denial based on the detainers was filed in any Texas state court, and no claim was filed in New Mexico's highest state court concerning these grounds. *See id*. at 6, 9–11; *see also* Appendix, attached to FCR (listing federal/state habeas filings), at 1–5. Petitioner argues he only became aware of the 1984 New Mexico district court filing, and the use of the detainers to deny parole in Texas, in 2017. *See id.* He does not indicate by his petition why he did not file first in Texas state court, nor pursue further action on the detainers in a New Mexico *state* court. *See id.* Although the Respondent argues for dismissal for failure to exhaust under Section 2254, the Court *sua sponte* considers the failure to exhaust under Section 2241. As noted above, the process of bringing the challenge before the Texas Supreme Court remains the same in either instance.

The Court finds *sua sponte* that the petition should be dismissed for failure to exhaust state court remedies. Accordingly, <u>Petitioner is hereby specifically instructed that the filing of the Findings, Conclusions and Recommedation is notice to him that this Court is addressing the issue of failure to exhaust state court remedies and that Petitioner must submit any evidence or argument concerning exhaustion as part of any objections he may file to this recommendation.</u> *See Kurtzemann v. Quarterman*, 306 Fed. Appx. 205, 206 (5th Cir. 2009) (district court may *sua sponte* raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing *Day v. McDonough*, 547 U.S. 198, 209–10 (2006) (addressing limitations) and *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

Therefore, the Court recommends Petitioner's habeas action be denied for failure to exhaust his administrative remedies.

## B. Abuse of the Writ

Although the Court has determined that, essentially, Petitioner is challenging his 2017 (and previous) denial of parole, to any extent that Petitioner sought to bring Section 2254 challenges to his conviction or Petitioner sought to challenge the actual validity of the detainers lodged by the New Mexico authorities, the Court determines these arguments would constitute an abuse of the writ, and would be barred as successive filings.

A habeas corpus petition is not a prohibited second or successive one, or an abuse of the writ simply because it follows an earlier federal petition. *See Hartfield v. Osborne*, 808 F.3d 1066, 1074 n.3 (5th Cir. 2015) (dismissal of Section 2241 petition does not necessarily bar a state prisoner from later filing a Section 2254 petition); *see also In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998). The courts have traditionally defined a petition as impermissibly successive when it: "(1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or (2) otherwise constitutes an abuse of the writ." *In re Cain*, 137 F.3d at 235. This includes applications "filed after a previous application was fully adjudicated on the merits … even if it contains claims never before raised." *Graham v. Johnson*, 168 F.3d 762, 774 n.7 (5th Cir. 1999) (citing *Felker v. Turpin*, 518 U.S. 651, 655-58, 662-63 (1996)).

The Fifth Circuit has held that "[t]he specific limitations on filing successive 28 U.S.C. § 2255 motions and 28 U.S.C. § 2254 habeas petitions that were enacted as 28 U.S.C. § 2244(b) under the AEDPA do not literally apply to 28 U.S.C. § 2241 habeas petitions." *Ortloff v. Fleming*, 88 Fed. Appx 715, 716 (5th Cir. 2004) (citations omitted); *see Williams v. Tamez*, 466 Fed. Appx 326, 327 (5th Cir. 2012) (affirming dismissal of successive Section 2241 petition as abuse of the

writ); *Jennings v. Menifee*, 214 Fed. Appx 406, 407 (5th Cir. 2007) (same). The Fifth Circuit instead has confirmed that district courts maintain discretionary authority to dismiss successive Section 2241 petitions under pre-AEDPA standards, as follows:

> A second or successive habeas petition that raises a claim for the first time is generally regarded as an abuse of the writ, unless the petitioner can show cause for his failure to raise the claim and prejudice from the errors which form the basis of his complaint; or that a refusal to hear the claim will result in a fundamental miscarriage of justice. *McCleskey v. Zant*, 499 U.S. 467, 493-95 (1991).

*Gilbert v. Purdy*, 192 F.3d 126 (5th Cir. 1999) (affirming district court's dismissal of a third Section 2241 petition containing new claims as an abuse of the writ); *see also Felker*, 518 U.S. at 664 (the AEDPA codified *McCleskey's* modified res judicata rule known as the abuse-of-the-writ doctrine).

The Supreme Court has also held that the pre-AEDPA abuse-of-the-writ doctrine applies to Section 2241 petitions:

> Before AEDPA, "abuse-of-the-writ principles limit[ed] a [habeas applicant's] ability to file repetitive petitions." *McCleskey v. Zant*, 499 U.S. 467, 483 (1991). That doctrine was more forgiving than AEDPA's gatekeeping provision - for example, enabling courts to hear a second or successive petition if the "ends of justice" warranted doing so. *Id.* at 485. But the rule against repetitive litigation still had plenty of bite. It demanded the dismissal of successive applications except in "rare case[s]."

*Bannister v. Davis*, -- U.S. --, 140 S. Ct. 1698, 1707 (2020).

Under the *McCleskey* standards, a petition is "second or successive" if it contains a new claim that the petitioner could have raised in a prior petition and the petitioner's failure to raise the claim is inexcusable. *McCleskey*, 499 U.S. at 489. Likewise, "a petitioner may abuse the writ by failing to raise a [new] claim through inexcusable neglect" or deliberate abandonment. *Id.* "A federal habeas court's power to excuse these types of defaulted claims derives from the court's equitable discretion." *Id.* Therefore, the decision to dismiss successive Section 2241 petitions as

9

an abuse of the writ lies within the sound discretion of the district court although not mandated by statute. *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994) (recognizing that the "decision to dismiss a second or subsequent federal habeas petition for abuse of the writ lies within its sound discretion.").

Under the abuse-of-the-writ doctrine, the petition must be dismissed unless a petitioner can show both "cause" and "prejudice" for failing to include the new claims in a previous petition or that a fundamental miscarriage of justice will occur if his petition is not considered. *McCleskey*, 499 U.S. at 494–95; *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (rejecting the proposition that showing of prejudice permits relief in the absence of cause). To establish "cause," a petitioner must demonstrate that "government interference or the reasonable unavailability of the factual basis for the claim … prevented [him] … from raising the claim." *McGary*, 27 F.3d at 184; *McCleskey*, 499 U.S. at 494, 498. Moreover, if the petitioner knew of the factual predicate for his claims before filing his first federal petition, he is barred from raising those claims in a later petition. *Crone v. Cockrell*, 324 F.3d 833, 837 (5th Cir. 2003). To show prejudice, a petitioner must demonstrate a reasonable probability that, but for the alleged error, the result of the proceeding would have been different. *Sawyer v. Whitley*, 505 U.S. 333, 363–64 (1992). A "fundamental miscarriage of justice" occurs only if the petitioner is actually innocent of the crime of conviction. *Id*. at 339; *Montoya v. Collins*, 988 F.2d 11, 13 (5th Cir. 1993). Applying these standards to Petitioner's claims that may be interpreted to challenge his New Mexico detainers' legality or direct challenges to the failure of Texas to transfer him to New Mexico to serve his nine-year sentence and thereby discharge one of the detainers, the petition is a successive petition and constitutes an abuse of the writ.[2]

---

[2] The Court distinguishes such challenges from the claim that he was denied parole in 2017 on the basis of the four detainers from New Mexico. It stands to reason that Petitioner only learned the specific reasons for his parole denial

The Court has compiled a list of Petitioner's Texas state court and Texas federal court habeas filings. *See* Appendix, attached to FCR, at 1–5. Although Petitioner asserts 2017 as a "discovery date" for the argument made by his prior counsel that he should have one of his New Mexico sentences "discharged" by nature of the timing of his pleas in Texas and New Mexico (an argument asserted in 1984), Petitioner was immediately aware once transferred back to Texas in the 1980s that he was never transferred back to New Mexico to serve any sentence. Additionally, Petitioner was present for the *order* of pleading his criminal cases and had knowledge of which plea occurred first in time. Thus, Petitioner's "discovery date" argument fails entirely. Petitioner has always known that he was not sent back to New Mexico in 1987 upon completion of his first sentence in Texas (for the Travis County, Texas aggravated robbery charge).

Furthermore, Petitioner cannot show, and indeed has not argued, that he is prejudiced by the failure to serve a nine-year sentence in New Mexico–and subsequently discharge a *single* detainer from New Mexico–when three other New Mexico detainers would remain on his Texas sentence. Even if Texas transferred him for his nine-year sentence, pursuant to his own reasoning in this petition, New Mexico would be required to transfer him back to Texas to serve the sentence on his 1983 murder conviction out of Andrews County, Texas, before any sentence could commence on his *three* other detainers for his 1984 convictions in New Mexico. Thus, even if Petitioner was again eligible for parole in Texas (assuming a transfer back to Texas after serving the nine-year sentence), his parole would much more likely be affected by detainers for life sentences for another murder than for a single detainer for an older aggravated robbery.

---

in 2017 after parole was, in fact, denied. Thus, to the extent he challenges only his parole denial, such claims are unexhausted, as outlined above. To the extent he challenges the legality of the actual detainers, or the execution of his sentence in serving all of his Texas time on his Andrews County, Texas murder charge before serving any time on his Eddy County, New Mexico aggravated robbery and conspiracy charges, these claims constitute an abuse of the writ and are successive. Petitioner could have raised these claims in numerous prior petitions.

Significant to his current claims, Petitioner has previously challenged how a detainer has affected his parole after the first denial of parole in 2003. In 2004, Petitioner filed a federal habeas application challenging his immigration detainer on the grounds that such detainer effectively denied him the opportunity for parole in Texas. *See* Appendix, attached to FCR, at 3, *Rodriguez v. U.S. Immigration Dept.*, No. 4:04-CV-3106 (S.D. Tex. Aug. 16, 2004). Nowhere in his 2004 petition did Petitioner argue that the New Mexico detainers operated to deny him parole, nor did he challenge the failure, by Texas authorities, to transport him to New Mexico to serve the nine-year sentence on his first accrued New Mexico detainer. *See id*. The court determined that, in that case, as Petitioner was not seeking immediate release, his claims constituted a 1983 civil rights complaint, but Petitioner was barred by the three-strikes provision from proceeding *in forma pauperis* on these claims. *Id.* Petitioner also had the opportunity during his 2004 petition to challenge *any and all* detainers that might have affected his parole considerations in Texas, but he failed to do so. As noted above, his "discovery date" argument does not persuade this Court that such challenge was unavailable at the time he filed his prior petition in 2004 (if, indeed, such detainers are the basis for his parole denial). As Petitioner has filed multiple habeas petitions since the 1987 discharge of his first Texas sentence, *see* Appendix, attached to FCR, his claim is abusive.

In conclusion, any direct challenge by Petitioner to the validity of the detainers or the failure to complete his *first* New Mexico sentence would constitute an abuse of the writ and a successive habeas petition, and the Court recommends that Petitioner's habeas application be denied on these grounds as well.

    **C. Non-cognizable Claim**

Notably, Petitioner does not allege that the federal detainer was lodged with Texas authorities in violation of the Constitution or federal law. As such, Petitioner is not entitled to any

of the relief he requests to alleviate the effect allegedly given to the detainer by state officials during his parole hearing in any instance. Although Respondent also argues that Petitioner has no liberty interest in the expectancy of release to parole (ECF 20 at 7), which is accurate, some parole claims are cognizable in Section 2241 petitions; and thus, the Court does not find all such claims to be non-cognizable. However, Petitioner's failure to allege legal defects in lodging the New Mexico detainers with Texas authorities would negate any relief opportunities. New Mexico did not lodge invalid detainers (in fact, Petitioner acknowledges that he should be transferred to New Mexico to serve his sentences); rather, Petitioner argues that Texas failed to allow one such detainer to be executed timely, and the Court has determined that argument should have been brought in any of Petitioner's numerous habeas petitions filed after 1987.

## V. RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Eugenio Lopez Rodriguez be DENIED.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED December 21, 2020.

*LEE ANN RENO*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).